FILED

JUL 29 2011

CLERK, U.S. DISTRICT COURT
ALEXANDRIA, VIRGINIA

**IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA**

**Alexandria Division**

| | | |
|---|---|---|
| **David William Conn,** | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **1:11cv758 (CMH/TCB)** |
| | ) | |
| **Sheriff Ken Stolle, et al.,** | ) | |
| **Defendants.** | ) | |

MEMORANDUM OPINION AND ORDER

David William Conn, a Virginia inmate proceeding pro se, has filed a civil rights action,

pursuant to 42 U.S.C. § 1983, alleging that his right to due process was violated when he was

deprived of privileges and subjected to retaliation at the Virginia Beach Correctional Center

("VBCC"). Plaintiff has applied to proceed in forma pauperis in this action. After reviewing

plaintiff's complaint, the claim against defendants must be dismissed pursuant to 28 U.S.C. §

1915A(b)(1) for failure to state a claim for which relief can be granted.[1]

I.

---

[1] Section 1915A provides:

(a) **Screening.**—The court shall review, before docketing, if feasible or, in any event,
as soon as practicable after docketing, a complaint in a civil action in which a
prisoner seeks redress from a governmental entity or officer or employee of a
governmental entity.

(b) **Grounds for dismissal.**—On review, the court shall identify cognizable claims
or dismiss the complaint, or any portion of the complaint, if the complaint—
(1) is frivolous, malicious, or fails to state a claim upon which relief
can be granted; or
(2) seeks monetary relief from a defendant who is immune from such
relief.

1

Plaintiff alleges that from February 17, 2011 until he filed his complaint on July 11, 2011, he was deprived of his telephone, television, recreation and visitation privileges without procedural due process "on no less than six occasions." In one of two incidents that plaintiff describes, Deputy Gleason noticed several inmates in the day room who were not wearing jumpsuits, which violated the institutional rule that all inmates must have their jumpsuits on when they are not in bed. The deputy stated that if he came back on his rounds and caught anyone without a jumpsuit, the entire block would be placed on 24-hour lockdown. When the deputy returned, three inmates were not wearing their jumpsuits, and the block was placed on 24-hour lockdown. Plaintiff asserts that he was not one of the improperly dressed inmates so he "voiced [his] complaint" to Deputy Gleason that he should not lose his privileges due to another inmate's actions, but the deputy responded that since more than one person had his jumpsuit off everyone had to pay. When the deputy made his next round, he informed the inmates that his supervisor had placed the block on a 48-hour lockdown, and plaintiff told the deputy that he would be filing a grievance and wished to speak to the supervisor. The deputy responded that the supervisor had gone home, and told plaintiff to spell his name right on the grievance. Plaintiff submitted a grievance on June 23, 2011, complaining that he was deprived of privileges without due process, but the grievance was deemed unfounded on the ground that whenever an infraction is committed by one or more inmates, institutional security is paramount, so the action which is taken will be swift and final.

In a second incident on June 26, 2011, plaintiff alleges that an altercation took place in his dormitory between two other inmates, one of whom was injured and taken to the medical department. Ten minutes later, Sgt. Bishop and Cpl. Apfel came to the dormitory and asked if anyone else had been fighting, and when everyone said no all of the inmates were removed for interrogation. During questioning, plaintiff stated that he had been asleep when the fight occurred,

and he was told to sit with the other inmates in the hall while the dormitory was searched for weapons and contraband. When the search was completed, an inmate was removed from the line for being the other person involved in the altercation, and afterwards Sgt. Bishop and Cpl. Apfel informed the remaining inmates that they were all being placed on indefinite lockdown status for refusing to cooperate with an investigation. Plaintiff responded that he felt it was unfair since he had cooperated by answering all questions to the best of his ability, and he pointed out that the second inmate involved in the fight had been removed from the dormitory. Plaintiff filed a grievance on June 28, 2011 stating that his privileges had been suspended without due process, and he received a response stating that the matter was non-grievable and that procedure dictates that for safety reasons, any breach in security requires that the cell or jail be placed on lockdown.

Plaintiff alleges that the VBCC has a blanket policy allowing any deputy to place a cell or dormitory on lockdown, and that when such an action occurs inmates who were not involved in any institutional violation lose privileges. Plaintiff asserts that this bypasses the disciplinary process and deprives the inmates of due process. Plaintiff contends that lockdowns serve no penological purpose and are done merely to punish inmates, and that the withholding his privileged causes him to suffer significant hardships in relation to the ordinary incidents of prison life. Plaintiff alleges specifically that he was deprived of procedural process when he lost his privileges without being heard, and that his substantive due process rights were violated when Sgt. Bishop and Cpl. Apfel retaliated against him for his inability to identify the offending inmate in the dormitory fight. Plaintiff requests the appointment of counsel, and as relief he seeks an award of monetary damages and an injunction prohibiting institutional staff from suspending privileges without due process.

## II.

In reviewing a complaint pursuant to § 1915A, a court must dismiss a prisoner complaint that

3

is frivolous, malicious, or fails to state a claim upon which relief can be granted. 28 U.S.C. § 1915A(b)(1). Whether a complaint states a claim upon which relief can be granted is determined by "the familiar standard for a motion to dismiss under Fed. R. Civ. P. 12(b)(6)." Sumner v. Tucker, 9 F. Supp. 2d 641, 642 (E.D. Va. 1998). Thus, the alleged facts are presumed true, and the complaint should be dismissed only when "it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." Hishon v. King & Spalding, 467 U.S. 69, 73 (1984). To survive a 12(b)(6) motion, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. ----, ----, 129 S. Ct. 1937, 1949 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. However, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" to meet this standard, id., and a plaintiff's "[f]actual allegations must be enough to raise a right to relief above the speculative level...". Twombly, 550 U.S. at 55. Moreover, a court "is not bound to accept as true a legal conclusion couched as a factual allegation." Iqbal, 129 S. Ct. at 1949-1950.

### III.

Plaintiff's argument that he suffered a violation of his right to procedural due process when he was placed on lockdown status and his privileges were suspended without a hearing states no claim on which relief can be granted. When a defendant is lawfully convicted and confined to jail, he loses a significant interest in his liberty for the period of that sentence. Gaston v. Taylor, 946 F.2d 340, 343 (4th Cir. 1991). Confinement does not strip inmates of all liberty interests, and the due process clause of the Fourteenth Amendment mandates procedural safeguards before an inmate can

4

be punished by conditions so dramatically different from the basic range of constraints contemplated by his sentence. Sandin v. Conner, 515 U.S. 472, 483-84 (1995). However, as the Supreme Court recognized in Sandin, such liberty interests "will generally be limited to the freedom from restraint which, while not exceeding the sentence in such an unexpected manner as to give rise to protection by the Due Process Clause by its own force, nonetheless imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." Id. at 484. On the other hand, the protections of the due process clause do not attach unless the plaintiff was deprived of such a liberty interest. Lekas v. Briley, 405 F.3d 602, 607 (7th Cir. 2005).

Here, contrary to plaintiff's assertions, his confinement in lockdown status and the deprivations he allegedly suffered as a result - that is, loss of his television, telephone, recreation and visitation privileges - do not amount to an "atypical and significant hardship... in relation to the ordinary incidents of prison life," and so do not warrant constitutional protection. In Beverati v. Smith, 120 F.3d 500, 504 (4th Cir. 1997), the Fourth Circuit held that an inmate's loss of, *inter alia*, outside recreation does not impose a sufficiently atypical and significant hardship to mandate federal due process protections before the inmate can be moved to segregation. Courts have expressly recognized that "[t]here is no constitutional right to watch television." Murphy v. Walker, 51 F.3d 714, 718 n.8 (7th Cir. 1995); accord, James v. Milwaukee County, 956 F.2d 696, 699 (7th Cir. 1992). In Boriboune v. Litscher, 91 Fed. App'x 498, 500 (7th Cir. 2003), the Seventh Circuit held that a short-term loss of telephone privileges while in disciplinary segregation implicated no liberty interest and triggered no due process protection. See also, Johnson v. Vroman, 2006 WL 1050497 at *2 (W.D. Mich. 2006) (finding that a six-month restriction on telephone privileges does not amount to an atypical or significant hardship in relation to the ordinary incidents of prison life that would warrant due process protection). It is also well established that a prisoner has no direct

5

constitutional right to visitation. See, e.g., Kentucky Dept. of Corrections v. Thompson, 490 U.S. 454, 460-61 (1989) ("The denial of prison access to a particular visitor is well within the terms of confinement ordinarily contemplated by a prison sentence, therefore is not independently protected by the Due Process Clause."). Courts that have analyzed inmates' entitlement to visitation under the Sandin principles also have concluded that there exists no liberty interest in visitation while incarcerated which is adequate to trigger the due process protections of the Fourteenth Amendment. See, e.g., Stevens v. Robles, 2008 WL 667407 at **6-7 (S.D. Cal. Mar. 7, 2008) (prisoners have no right to family visits, either independently protected by the Due Process Clause or as a liberty interest created by state laws or regulations), and cases cited. Therefore, taking as true plaintiff's allegations regarding his placement in lockdown status and consequent deprivation of telephone, television, visitation and recreation privileges, he has failed to state a claim for which § 1983 relief can be granted.

As to plaintiff's contention that he suffered retaliation at the hands of Sgt. Bishop and Cpl. Apfel, an actionable claim for retaliation must meet several requirements. First, a plaintiff must show that the allegedly "retaliatory act violated some constitutional right of an inmate or constituted punishment for the exercise of a constitutional right." Cochran v. Morris, 73 F.3d 1310, 1318 (4th Cir. 1996). An inmate must allege facts demonstrating that exercise of some constitutional right was a substantial factor motivating the retaliation. See Wagner v. Wheeler, 13 F.3d 86, 90-91 (4th Cir. 1993). Secondly, plaintiff must show a sufficiently adverse impact on a constitutional right as a result of retaliation. ACLU of Maryland, Inc. v. Wicomico, 999 F.2d 780, 785 (4th Cir. 1993). Where a plaintiff has not alleged an impairment of his constitutional rights, "there is no need for the protection provided by a cause of action for retaliation," therefore, a showing of adversity is essential to any retaliation claim. Id. Finally, plaintiff must demonstrate that prison officials' actions did not

6

advance legitimate penological objectives. Talbert v. Hinkle, 961 F. Supp. 904, 911 (E.D.Va. 1997) (citing Pell v. Procunier, 417 U.S. 817, 822 (1974)).

Here, plaintiff's allegations do not satisfy these criteria. Plaintiff alleges that he was punished by Sgt. Bishop and Cpl. Apfel for failing to identify the second inmate who participated in the dormitory altercation, so his claim does not satisfy the requirement that the retaliation must have violated a constitutional right of the plaintiff or constituted punishment for his exercise of a constitutional right. Cf. Cochran, 73 F.3d at 1318. In addition, the retaliation here is alleged to have taken the form of undeserved placement in lockdown status, and as discussed above, placement in such status and the consequent loss of institutional privileges does not impact an inmate's constitutional rights. Cf. ACLU, 999 F.2d at 785. Therefore, plaintiff states no claim of retaliation for which § 1983 relief is available. As plaintiff's complaint will be dismissed, his requests to proceed in forma pauperis and for the appointment of counsel will be denied, as moot.

Accordingly, it is hereby

ORDERED that this action be and is DISMISSED WITH PREJUDICE for failure to state a claim, pursuant to 28 U.S.C. § 1915A(b)(1); and it is further

ORDERED that plaintiff is advised that, pursuant to 28 U.S.C. § 1915(g),[2] this dismissal may affect his ability to proceed in forma pauperis in future civil actions; and it is further

ORDERED that the Clerk record this dismissal for purposes of the Prison Litigation Reform

---

[2] 28 U.S.C. § 1915(g) provides:

> In no event shall a prisoner bring a civil action or appeal a judgment in a civil action or proceeding under this section if the prisoner has, on 3 or more prior occasions, while incarcerated or detained in any facility, brought an action or appeal in a court of the United States that was dismissed on the grounds that it is frivolous, malicious, or fails to state a claim upon which relief may be granted, unless the prisoner is under imminent danger of serious physical injury.

7

Act; and it is further

ORDERED that plaintiff's request to proceed in forma pauperis (Docket # 2) be and is
DENIED as moot; and it is further

ORDERED that plaintiff's request for the appointment of counsel be and is DENIED as
moot.

To appeal, plaintiff must file a written notice of appeal with the Clerk's Office within thirty
(30) days of the date of this Order. See Fed. R. App. P. 4(a). A written notice of appeal is a short
statement stating a desire to appeal this Order and noting the date of the Order plaintiff wants to
appeal. Plaintiff need not explain the grounds for appeal until so directed by the court.

The Clerk is directed to send of copy of this Memorandum Opinion and Order to plaintiff and
to close this civil case.

Entered this 29 <u>th</u> day of July 2011.

            /s/

Claude M. Hilton
United States District Judge

Alexandria, Virginia

8